IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DORRIS L. SITTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-cv-411-WDS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Review of the Commissioner's Decision Denying Benefits filed by the plaintiff, Dorris L. Sitter, on September 6, 2005 (Doc. 9). For the reasons set forth below, it is **RECOMMENDED** that the plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the defendant, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

#### PROCEDURAL HISTORY

The plaintiff, Dorris L. Sitter, applied for Disability Insurance Benefits on October 12, 2002, alleging an onset date of January 1, 2000 (Tr. 45), which he later amended to October 21, 2002 (Tr. 14). His claim was initially denied on March 4, 2003 (Tr.23-26), and upon review on May 9, 2003 (Tr. 28-31). The plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on June 10, 2004 (Tr. 323-343). After the hearing, ALJ Marsha R.

1

Stroup issued an unfavorable decision on July 14, 2004 (Tr. 14-19). The plaintiff requested Appeals Council review of the decision (Tr. 6). The Appeals Council denied review on April 29, 2005 (Tr. 3-5), which constituted the final review of the agency. The plaintiff filed this suit in the U.S. District Court for the Southern District of Illinois on June 9, 2005.

**SUBSTANTIVE HISTORY**

**Medical History**

The plaintiff suffered his first of two heart attacks in September 1995, with the second occurring in March 1999 (Tr. 151). At the time of his second heart attack, the plaintiff was diagnosed with coronary artery disease and underwent balloon angioplasty with post stent placement (Tr. 151). O n April 11, 2000, the plaintiff reported to Dr. Mohammed Y. Mansuri, a cardiologist, that he was working part-time in construction and yard maintenance (Tr. 225). He also reported that he was smoking a pack of cigarettes per day (Tr. 227).

In a December 2002 consultive evaluation, the plaintiff complained to Dr. Raymond Leung that he had been experiencing chest pains once or twice a month (Tr. 151). At that time, he also complained of left upper leg pain after walking one block, back pain with prolonged standing, difficulty squatting, and pain with bending (Tr. 151). He also informed Dr. Leung that he had increased his smoking to 1 ½ packs of cigarettes per day (Tr. 152). Dr. Leung examined the plaintiff and found that he had a regular heart rate and rhythm, no murmurs, gallops, or rugs, and that he had full range of motion of the left hip and lumbar spine (Tr. 153).

On January 8, 2003, the plaintiff underwent a treadmill stress test using the Bruce protocol (Tr. 157). After exercising on the treadmill for four minutes, the plaintiff requested the test be stopped and complained of shortness of breath, generalized fatigue, and leg aches (Tr.

157). Nonetheless, the test indicated that the plaintiff achieved 98% of his maximally predicted heart rate, that there was no ischemic response, and that his workload was seven METS (Tr. 157).

The plaintiff saw Dr. Richard T. Sokol on April 7, 2003, complaining of left heel pain (Tr. 174). Dr. Sokol found the plaintiff's foot to be normal in appearance apart from the presence of papules on the left heel areas (Tr. 174). He ultimately diagnosed the plaintiff as having plantar fasciitis and treated him with Medrol, Salsalate, stretching, and shoe inserts (Tr. 174). In a May 20, 2003 follow-up examination, Dr. Sokol reported that the April 7, 2003 X-rays of the plaintiff's foot were negative and that the plaintiff reported that he no longer experienced tenderness or pain in his heel at that time (Tr. 312). Consequently, Dr. Sokol concluded that the heel pain was resolved (Tr. 312).

**Hearing Testimony**

Both the plaintiff and a vocational expert, Dr. Thomas Upton, testified at the hearing. In response to questions asked by the ALJ, the plaintiff testified that he experiences shortness of breath and slight chest pain when he does "too much physical or walking," such as the going downstairs to feed his dog and returning to ascend the four-step staircase leading to his kitchen door (Tr. 331, 332). He further testified that he successfully uses nitroglycerin to alleviate the chest pain and that the nitroglycerin does not give him any side effects (Tr. 332). He stated that his legs start to hurt after walking one block (Tr. 333). He then testified that the arthritis in his leg keeps him from working (Tr. 333). He also testified that he had been experiencing pain in his right foot, but that the pain later shifted to his left ankle (Tr. 334). Next, the plaintiff testified that he would not be able to remain on his feet in one place for more than a half hour at a time

(Tr. 334).

In response to questions asked by the ALJ and his attorney, the plaintiff indicated that, sometime between 1983 and 1990, he worked for three years on a golf course doing mostly watering (Tr. 330, 338). He testified that his watering duties included dragging around 40 pound hoses (Tr. 338-339). He testified further that, between 1989 and 1992, he had also been employed as a painter and paperhanger in hotels (Tr. 339). He next testified that he would not be able to do a job that required him to stay on his feet for six hours per day, even if he were allowed to sit for 15 minutes after standing the first 45 minutes of each hour (Tr. 339). The plaintiff then testified that the pain he experiences in his hip after standing too long would register between seven and eight on a pain scale of zero (no pain) to ten (worst pain imaginable) (Tr. 340). Similarly, he testified that he experiences a pain level of seven in his left foot when he stands on his feet too long (Tr. 341). Next, the plaintiff stated that he would be able to lift no more than 10 pounds every 20 minutes during an eight hour day (Tr. 341). The plaintiff then clarified that he could do the same lifting task with a weight of 20 pounds, but not 50 pounds (Tr. 342).

Dr. Thomas Upton testified that the plaintiff performed both the groundskeeper job and the painter job at the "medium, unskilled level of employment" (Tr. 342). The ALJ then stated that, because she believed the plaintiff could go back to his "old work," she felt it unnecessary to ask the Dr. Upton about other vocations (Tr. 343).

## CONCLUSIONS OF LAW

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are

4

supported by substantial evidence. 42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Secuirty, as to any fact, if supported by substantial evidence, shall be conclusive ..."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility") (quotation marks and citations omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). *See also* Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. See Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

     Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §416.920. The ALJ first considers whether the claimant is presently employed or

5

"engaged in substantial gainful activity." 20 C.F.R. §416.920(c). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage is past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, if light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

The plaintiff's central argument is that the ALJ's decision to deny benefits is unsupported by substantial evidence (Tr. 8-10). The plaintiff argues that the ALJ misconstrued the plaintiff as stating that he could lift 20 pounds "<u>frequently</u>," when the plaintiff actually stated that he could lift 20 pounds "<u>occasionally</u>." (Tr. 9) (emphasis in original). Relying on <u>Golembiewski v. Barnhart</u>, 322 F.3d 912 (7th Cir. 2003), the plaintiff avers that the ALJ committed "clear error" by applying a "mischaracterization of the evidence...to undermine the [plaintiff's] credibility" (Tr. 9). The plaintiff also argues that the ALJ relied upon irrelevant medical information and

6

testimony to undermine the plaintiff's credibility and determine that the plaintiff could perform medium work (Tr. 8-10).  Specifically, the plaintiff avers that the ALJ's finding that the plaintiff could perform medium work is inconsistent with the ALJ's finding of "severe impairments." (Tr. 8).  Similarly, the plaintiff takes issue with the fact that the plaintiff ended the treadmill stress test after only four minutes, alluding that the plaintiff's termination of the test illustrated that he lacked the physical tolerance to perform medium work (Tr. 10).  Lastly, the plaintiff argues that the ALJ improperly considered the work the plaintiff did prior to the amended onset date to support a finding that he can perform medium work (Tr. 10).

In Golembiewski, the Seventh Circuit found that an ALJ committed a legal error when he mischaracterized medical evidence and then relied upon the mischaracterization to support his ultimate rejection of the plaintiff's claims for disability benefits.  See 322 F.3d 912, 916-917 (2003).  Although the plaintiff is correct that the ALJ characterized the plaintiff's testimony as declaring the ability to lift 20 pounds "frequently," when the plaintiff actually testified to his ability to lift 20 pounds "occasionally," nothing in the ALJ's decision here indicates that she relied upon this part of the testimony to determine that the plaintiff could perform a medium level job.  In fact, the ALJ listed the various factors that influenced her decision, which included the plaintiff's medical history reflecting no coronary complaints since his second heart attack in 1999, the plaintiff's return to medium level work in 2000, the fact that the plaintiff defied medical advice to quit smoking, and the fact that a podiatrist concluded that the plaintiff had no debilitating problems in his lower extremities (Tr. 17).  In light of those factors, the ALJ concluded that the plaintiff's testimony as to his own limitations was "exaggerated and not consistent with the medical evidence." (Tr. 17).  Unlike in Goliembiewski, the ALJ here relied

7

on objective medical evidence, rather than discounting it, in her determination that the plaintiff was not eligible for disability benefits. Thus, the plaintiff's opening argument and reliance upon Goliembiewski are unpersuasive.

The plaintiff's argument that a finding of severe impairments is inconsistent with a subsequent finding that the plaintiff can perform medium work is unavailing because the five-step sequential evaluation in the Social Security regulations requires the ALJ to determine the plaintiff's residual functional capacity after finding a severe impairment that is not listed in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §416.920(c). The ALJ noted that the impairments found were not listed and thus continued with the evaluation, ultimately determining that the plaintiff could perform medium work (Tr. 16). There was nothing inconsistent about the ALJ's two findings because her proper application of the five-step evaluation rendered these findings inevitable.

The plaintiff's next argument alludes that this Court should reconsider the fact of the plaintiff's performance on the treadmill test and conclude that the ALJ erred by not deeming it evidence of the plaintiff's inability to perform medium work (Tr. 10). The law of the Seventh Circuit forbids a reviewing court from "substitut[ing] its judgment for the ALJ's by reconsidering facts, reweighing evidence[.]" Golembiewski, 322 F.3d at 915. Even if this Court were inclined to reconsider this fact, the plaintiff has presented no argument as to why the plaintiff's poor performance on the treadmill indicates anything other than poor physical fitness -- exacerbated by his refusal to stop smoking as doctors have repeatedly advised.

Lastly, the plaintiff's argument that the ALJ improperly considered work the plaintiff did prior to the amended onset date in her determination that the plaintiff can perform medium work

is equally unpersuasive because it suggests, as did the previous argument, that this Court should reconsider and reweigh one of multiple facts from which the ALJ could have derived her conclusion.  Furthermore, the plaintiff has presented no legal authority supporting the proposition that the ALJ may not consider work performed prior to the onset date in her determination of the plaintiff's residual functional capacity.

As stated above, the ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.  See Goliembiewski, 322 F.3d at 915.  The ALJ here linked all of her findings to objective medical evidence or testimony offered at the hearing.  Likewise, the plaintiff failed to show that the ALJ committed an error of law.  Therefore, the ALJ's decision must be upheld.

For the reasons set forth above, it is **RECOMMENDED** that the Petition for Review of the Commissioner's Decision Denying Benefits filed by the plaintiff, Dorris L. Sitter, on September 6, 2005 (Doc. 9) be **DENIED**, that judgment be entered in favor of the defendant, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 11, 2006**

                                                s/ *Donald G. Wilkerson*
                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**